**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
ERIC M. STAHL (State Bar No. 292637)
  ericstahl@dwt.com
DIANA PALACIOS (State Bar No. 290923)
  dianapalacios@dwt.com

Attorneys for Defendants
JORDAN PEELE, BLUMHOUSE
PRODUCTIONS, LLC, QC ENTERTAINMENT,
AND NBCUNIVERSAL MEDIA, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| TIA GRIFFIN,<br><br>                    Plaintiff,<br><br>        vs.<br><br>JORDAN PEELE, BLUMHOUSE<br>PRODUCTIONS, QC<br>ENTERTAINMENT, AND NBC<br>UNIVERSAL MEDIA, LLC,<br><br>                    Defendants. | Case No. 5:17-cv-01153-JGB-KK<br><br>**NOTICE OF MOTION AND<br>MOTION TO DISMISS<br>PLAINTIFF'S COMPLAINT<br>AGAINST DEFENDANTS<br>(F.R.C.P. 12(b)(6))**<br><br>Hearing Date:     August 21, 2017<br>Time:                   9:00 a.m.<br>Courtroom:        1<br><br>[Request For Judicial Notice;<br>Declaration Of Eric M. Stahl With<br>Exhibits 1, 3-14; Notice Of Lodging Of<br>Exhibit 2; and [Proposed] Order Filed<br>Concurrently.] |

**TO PLAINTIFF, <u>IN</u> <u>PRO</u> <u>PER</u>:**

PLEASE TAKE NOTICE that on August 21, 2017, at 9:00 a.m. or as soon thereafter as this matter may be heard in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division, located at 3470 Twelfth Street, Riverside, California 92501, Defendants Jordan Peele, Blumhouse Productions, LLC, QC Entertainment and NBCUniversal Media, LLC ("Defendants") will and hereby do move to dismiss with prejudice the Complaint filed by Plaintiff Tia Griffin ("Plaintiff") in its entirety.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff's Complaint fails to state a claim for which relief can be granted, for each of the following reasons:

1. Plaintiff's three "Counts," each of which purports to assert a claim under federal copyright law, all fail because:

   a) Plaintiff has not sufficiently alleged, and cannot sufficiently allege, that any of the Defendants had access to Plaintiff's book, "The Covering" (the "Book"), which is the work she claims was infringed. Memorandum, Section IV.A.

   b) There is no substantial similarity of protectable expression between the Book and Defendants' full-length fictional feature film, "Get Out" ("the Film"). Memorandum, Section IV.B below

2. To the extent Plaintiff's Second and Third Counts – although titled as additional "copyright" claims – are intended to assert claims for reverse passing-off, based on Plaintiff's allegations that the Film does not credit Plaintiff or her Book, those claims are barred by the United States Supreme Court's decision in <u>Dastar Corp. v. 20th Century Fox Film Corp.</u>, 539 U.S. 23 (2003). Memorandum, Section V.

3. Plaintiff's Third Count – titled as "copyright infringement and unfair competition" – fails on the same grounds as her other two claims; this

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

claim also fails because unfair competition laws do not apply to allegations of uncredited copying of literary works, and such claims are preempted by the Copyright Act.  Memorandum, Section VI.

Defense counsel made repeated efforts to conduct a pre-filing conference with Plaintiff pursuant to L.R. 7-3, but Plaintiff, who is <u>pro</u> <u>per</u>, refused to participate. <u>See</u> concurrently-filed Declaration of Eric M. Stahl at ¶ 5; Ex. 3.

This Motion is based on the Notice Of Motion, the attached Memorandum Of Points And Authorities, the concurrently-filed Declaration Of Eric M. Stahl with Exhibits 1, 3-14, the concurrently-filed Request For Judicial Notice, and the Notice Of Lodging With Exhibit 2; all other matters of which this Court may take judicial notice, the pleadings, files, and records in this action, and on such other argument as may be heard by this Court.

For all the reasons set forth in the Memorandum and related materials, and because Plaintiff cannot cure the inherent defects in her claims, the Complaint should be dismissed in its entirety, with prejudice.

DATED:  July 12, 2017

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
ERIC M. STAHL
DIANA PALACIOS

By:_____ */s/ Kelli L. Sager* _____
　　　　　　　Kelli L. Sager

Attorneys for Defendants
Jordan Peele, Blumhouse Productions, QC Entertainment and NBCUniversal Media, LLC

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT .................................................................. 1

II.   SUMMARY OF FACTS ........................................................................ 3

      A.   Procedural Background. ........................................................... 3

      B.   Allegations in the Complaint. ................................................. 3

III.  OVERVIEW OF WORKS AT ISSUE ................................................. 5

      A.   Plaintiff's Book ....................................................................... 5

      B.   The Film ................................................................................... 6

IV.   PLAINTIFF'S COPYRIGHT CLAIMS FAIL AS A MATTER OF LAW ...................................................................................................... 7

      A.   Plaintiff Has Not Sufficiently Alleged Facts Demonstrating Defendants Had Access To Her Work. ................................. 7

      B.   Plaintiff Cannot Meet Her Burden Of Demonstrating Substantial Similarity Of Protected Expression. ..................... 9

           1.   The Absence Of Substantial Similarity Can Be Determined By The Court On A Motion to Dismiss. ............... 9

           2.   The Works Are Not Substantially Similar. ............................. 10

                a.   Any Similarities Between The Book and The Film Are Outside The Scope Of Copyright Protection. ................ 11

                b.   There Are No Protectable Elements In The Two Works That Are Substantially Similar. ..................... 14

V.    TO THE EXTENT PLAINTIFF IS ATTEMPTING TO ASSERT A "REVERSE PASSING OFF" CLAIM, IT IS LEGALLY BARRED. ......... 22

VI.   PLAINTIFF'S UNFAIR COMPETITION CLAIM FAILS FOR THE SAME REASONS AS HER OTHER CLAIMS, AND IS PREEMPTED... 24

VII.  CONCLUSION ................................................................................... 25

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page(s)

**Cases**

8th Wonder Entm't, LLC v. Viacom Int'l, Inc.,
2016 WL 6882832 (C.D. Cal. Nov. 22, 2016)...............................................13, 19

A Slice of Pie Prods. v. Wayans Bros. Entm't,
392 F. Supp. 2d 297 (D. Conn. 2005)....................................................................24

Aagard v. Palomar Builders,
344 F. Supp. 2d 1211 (E.D. Cal. 2004) .................................................................22

Apple Computer, Inc. v. Microsoft Corp.,
35 F.3d 1435 (9th Cir. 1994) ...........................................................................11, 12

Balistreri v. Pacifica Police Dep't,
901 F.2d 696 (9th Cir.1988) ...................................................................................9

Basile v. Sony Pictures Entm't Inc.,
2014 WL 12521344 (C.D. Cal. Aug. 19, 2014) ....................................................10

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007).............................................................................................8, 9

Berkic v. Crichton,
761 F.2d 1289 (9th Cir. 1985) ...................................................................12, 15, 17

Branch v. Tunnell,
14 F.3d 449 (9th Cir.1994) ......................................................................................5

Cavalier v. Random House, Inc.,
297 F.3d 815 (9th Cir. 2002) ..........................................................................*passim*

CDN Inc. v, Kapes,
197 F.3d 1256 (9th Cir. 1999) .................................................................................7

Chase-Riboud v. Dreamworks, Inc.,
987 F. Supp. 1222 (C.D. Cal. 1997) ........................................................................7

Chaset v. Fleer/Skybox Int'l,
300 F.3d 1083 (9th Cir. 2002) ...............................................................................14

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Christianson v. West Pub. Co.,
    149 F.2d 202 (9th Cir. 1945) ........................................................... 9

Dastar Corp. v. 20th Century Fox Film Corp.,
    539 U.S. 23 (2003).................................................................... 23, 24

DC Comics v. Towle,
    802 F.3d 1012 (9th Cir. 2015) ......................................................... 20

DuckHole Inc. v. NBC Universal Media LLC,
    2013 WL 5797279 (C.D. Cal. Sept. 6, 2013) ...................................... 10

Ets-Hokin v. Skyy Spirits, Inc.,
    225 F.3d 1068 (9th Cir. 2000) ......................................................... 12

Feist Publs., Inc., v. Rural Telephone Srvs. Co.,
    499 U.S. 340 (1991) ...................................................................... 12

Funky Films, Inc. v. Time Warner Entert. Co.,
    462 F.3d 1072 (9th Cir. 2006) ......................................................... 17

Gadh v. Spiegel,
    2014 WL 1778950 (C.D. Cal. Apr. 2, 2014) ....................................... 10

Gallagher v. Lions Gate Entm't Inc.,
    2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) ................................... 25

Gold Glove Prods., LLC v. Handfield,
    648 Fed. Appx. 679 (9th Cir. 2016)......................................... 11, 13, 19

Harper & Row Publishers, Inc. v. Nation Enters.,
    471 U.S. 539 (1985)....................................................................... 12

Heusey v. Emmerich,
    2015 WL 12765115 (C.D. Cal. Apr. 9, 2015) ............................... *passim*

Jules Jordan Video, Inc. v. 144942 Canada Inc.,
    617 F.3d 1146 (9th Cir. 2010) ......................................................... 24

Kodadek v. MTV Networks,
    152 F.3d 1209 (9th Cir. 1998) .................................................... 24, 25

Kouf v. Walt Disney Films & Television,
    16 F.3d 1042 (9th Cir. 1994) ..................................................... 11, 14

Kullberg v. Pure Flix Entm't LLC,
    2016 WL 7324155 (C.D. Cal. Oct. 12, 2016).................................................10, 15

Litchfield v. Spielberg,
    736 F.2d 1352 (9th Cir. 1984) ...........................................................................14

Mir v. Little Co. of Mary Hosp.,
    844 F.2d 646 (9th Cir. 1988) .............................................................................10

Olson v. NBC,
    855 F.2d 1446 (9th Cir. 1988) .............................................................12, 19, 20

Rice v. Fox Broadc. Co.,
    330 F.3d 1170 (9th Cir. 2003) ...........................................................................12

Satava v. Lowry,
    323 F.3d 805 (9th Cir. 2003) .............................................................................12

Shame on You Prods. v. Banks,
    120 F. Supp. 3d 1123, 1151 (C.D. Cal. 2015) ...................................................14

Sid & Marty Kroft Television Prods., Inc. v. McDonald's Corp.,
    562 F.2d 1157 (9th Cir. 1977) ........................................................................7, 12

Silas v. Home Box Office, Inc.,
    201 F. Supp. 3d 1158, 1168 (C.D. Cal. 2016) ..........................................*passim*

Stern v. Does,
    978 F. Supp. ......................................................................................................19

Three Boys Music Corp. v. Bolton,
    212 F.3d 477 (9th Cir. 2000) ......................................................................7, 8, 11

Wages v. IRS,
    915 F.2d 1230 (9th Cir. 1990) ...........................................................................25

Walker v. Time Life Films, Inc.,
    784 F.2d 44 (2d Cir. 1986)..................................................................................21

Wild v. NBC Universal, Inc.,
    788 F. Supp. 2d 1083 (C.D. Cal. 2011), aff'd, 513 Fed. Appx. 640
    (9th Cir. 2013).....................................................................................................10

Williams v. UMG Recordings,
    281 F. Supp. 2d 1177 (C.D. Cal. 2003) .............................................................23

vi

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Zella v. E.W. Scripps Co.,
     529 F. Supp. 2d 1124 (C.D. Cal. 2007) ..........................................*passim*

**Statutes**

15 U.S.C. § 1125(a)(1)(A) ...............................................................23

17 U.S.C.
     § 101 ...................................................................................4, 25
     § 102 .......................................................................12, 24, 25
     § 103 .........................................................................................24
     § 106 .........................................................................................24
     § 301 .................................................................................24, 25
     § 505 .........................................................................................25

28 U.S.C. § 1338(a) .................................................................................3

15 U.S.C § 1125(a) .....................................................................22, 23, 24

**Rules**

Federal Rules of Civil Procedure
     4(c)(1) ...................................................................................3
     12(b)(6) ...........................................................................*passim*

Federal Rules of Evidence 201 .................................................10

**Other Authorities**

4 Nimmer on Copyright § 13.02[A], at 13-19 (2003)...................7

DEFENDANTS' MOTION TO DISMISS
4817-0110-7531v.10 0103245-000008

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   SUMMARY OF ARGUMENT

This copyright action involves two works so facially dissimilar that they cannot plausibly support a claim of copyright infringement.  Plaintiff Tia Griffin alleges that Defendants' critically acclaimed feature film "Get Out" (the "Film") – a fictional horror movie about sinister activities at a wealthy couple's country home – copies her non-fiction self-help book about dating and religion (the "Book").

Plaintiff's attenuated claims appear to have been inspired by the fact that <u>one paragraph</u> of her Book refers to an incident in which she and an ex-boyfriend hit a deer while they were driving to his parents' house, and the Film contains a scene in which the lead characters are driving to the country estate of the female character's parents and hit a deer.  That both involve an interracial couple, and a few even more generic alleged "similarities" (<u>e.g.</u>, both works referring to a family that includes a mother, father, a sibling, and a dog), provide the entire basis for her claims.

To state a claim for copyright infringement, a plaintiff must plausibly allege the works at issue are substantially similar with respect to protectable expression.  The Court must evaluate substantial similarity by filtering out unprotected elements, such as ideas and general plot lines, and then comparing <u>only</u> the works' original protected expression.  <u>See</u> Section IV.B.2.a .  But a review of the Film and Plaintiff's Book makes clear that the protected expression could hardly be more <u>dis</u>similar.

Neither Plaintiff nor anyone else can claim the exclusive right to create works featuring an interracial couple – even one that has the remarkably common occurence of hitting an animal while driving, or the ubiquitous experience of having a family with two parents, a sibling, and a dog.  Copyright law protects original expression, not ideas – and here, the expressive elements in the two works at issue are <u>nothing</u> alike.  Plaintiff's Book purports to be a first-person account of her actual dating history, with lengthy ruminations about her ex-boyfriends, and advice to readers about pursuing relationships while being true to their religious beliefs.  The Film, in

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

contrast, is a suspenseful and entirely fictional horror story with racial overtones, in which an African-American man discovers sinister events taking place at the estate of his Caucasian girlfriend's parents, including kidnapping, a ghoulish medical procedure, and enslavement.  It ends violently for most of the featured characters.

On a motion to dismiss, this Court can review works identified in the Complaint to determine if there is substantial similarity of protectable expression. Zella v. E.W. Scripps Co., 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007).  Defendants have submitted for the Court's review the four chapters of Plaintiff's Book ("The Covering") that were attached to her Complaint, and a copy of Defendants' Film ("Get Out").  Exs. 1, 2.[1]  A comparison of the works easily establishes that the protected elements of the two works are strikingly dissimilar, as to every expressive element:  the "plot," "setting," "pace," "mood/theme," "dialogue," and "characters" are entirely distinct in these two works.  Plaintiff's attempt to state a copyright claim, based on her apparent belief that writing about her personal experiences somehow gives her a monopoly over fictional works depicting interracial couples, families with two children, a dog, or even road kill, is absurd on its face.

To the extent Plaintiff attempts to assert any other claims,[2] those also should be summarily rejected.  Her second "copyright" claim alleges that the Film allegedly usurped her "valuable goodwill," by purportedly copying from her Book without crediting her.  Cmplt. p. 16.  But controlling United States Supreme Court authority bars this kind of "reverse passing-off" claim.  See Section V.

Similarly, Plaintiff's third claim for "copyright infringement and unfair

---

[1] On June 16, 2017, Defendants made an expedited request to the U.S. Copyright Office for a certified copy of Plaintiff's Book as deposited in connection with the copyright registration alleged in the Complaint (Txu001922667).  They will submit it to the Court as soon as it is received.  Stahl Decl. ¶ 3.

[2] Although the Complaint is difficult to follow, Plaintiff purports to assert three causes of action, all captioned as "copyright" claims.  See Cmplt. pp. 4, 16, 19.

DEFENDANTS' MOTION TO DISMISS
4817-0110-7531v.10 0103245-000008

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

competition" simply repeats the same allegations from the first two defective claims and is barred for the same reasons those claims fail. In addition, this claim should be dismissed because it is preempted by federal copyright law. See Section VI.

Because all of Plaintiff's claims fail as a matter of law, and no amendment can cure the inherent defects, the entire Complaint should be dismissed with prejudice.

## II.    SUMMARY OF FACTS

**A.    Procedural Background.**

On March 3, 2017, Plaintiff filed a complaint in Riverside County Superior Court for "Literary Copyright Infringement," alleging (as in this case) that the Film copied from her Book. Ex. 4. She filed a First Amended Complaint ("FAC") on March 23. Ex. 5. Although Defendants informed Plaintiff that federal courts have exclusive jurisdiction over copyright claims, see 28 U.S.C. § 1338(a), she refused to dismiss her state claim voluntarily. Stahl Decl. ¶ 8. Defendants then filed a demurrer, which Judge Irma Poole Asberry sustained without leave to amend on June 7, 2017, on the ground that the court lacked subject matter jurisdiction. Id.; Ex. 6.[3]

One week later, Plaintiff filed this lawsuit. Although Plaintiff has not properly served the Complaint,[4] Defendants nevertheless are appearing to ask this Court to dismiss the entire lawsuit, because it is evident from the face of the two works at issue that her claims fail as a matter of law.

**B.    Allegations in the Complaint.**

Plaintiff alleges she is the author of a Book titled "The Covering," which was

---

[3] Plaintiff's Complaint in this action falsely asserts Judge Asberry "[d]enied" the demurrer but dismissed her case due to "improper venue." Cmplt. at 13, ¶ 19; Ex. 6. Judge Asberry denied Defendants' separate motion to strike under C.C.P. 425.16, California's SLAPP statute, finding that the statute did not apply; she did not make any ruling on the merits of Plaintiff's claims. Ex. 7.

[4] Plaintiff failed to serve a summons on Defendants, or even to obtain a court-issued summons; and Defendant Jordan Peele has not been personally served even with the Complaint. See Fed. R. Civ. P. 4(c)(1); Stahl Decl. ¶ 5.

DEFENDANTS' MOTION TO DISMISS
4817-0110-7531v.10 0103245-000008

registered with the U.S. Copyright Office in 2014 under copyright registration number TXu001922667.  Cmplt. (Dkt. No. 1) ¶¶ 1, 8 & Ex. A.  Plaintiff claims she self-published the Book, and that it was available on various websites at some unspecified time in the past.  Id. ¶ 13 & p. 11.[5]  Plaintiff asserts that the Film copies portions of chapters 5-7 of the Book, which are attached to her Complaint.  Id. pp. 7-8 & Ex. C; see also concurrently-filed Request For Judicial Notice ("RJN"), Ex. 1.[6]

Plaintiff alleges Defendants are "the Producer's [sic] and Production Team" for the Film "Get Out."  Cmplt. ¶ 2.  She claims Defendants "infringed upon my copyright by publishing, placing on the market, and commercially exploiting" the Film, which she claims is "copied largely from my copyrighted [Book]."  Id. ¶ 14 (emphasis added).  Notwithstanding this broad accusation, Plaintiff points to only a few isolated things in her Book that she claims were "copied" in the Film:  the depiction of an interracial couple meeting the white partner's parents for the first time (although the Book involves a black female/white male couple, and the Film depicts a black male/white female couple) (id. p. 8); a collision with a deer (an event mentioned in passing in a few sentences of the Book) (id. p. 8; Ex. 1 p. 75); a dinner attended by various (albeit different) family members; racial and relationship tension; and some degree of interpersonal "deception" (although she admits the characters deal with this "in a different way").  Cmplt. pp. 8-10.

Although Plaintiff asserts all of her claims arise under the Copyright Act, 17 U.S.C. § 101 et seq. (Cmplt. ¶ 4), she appears to assert three causes of action.  Count I expressly references the Copyright Act and the alleged infringements noted above.  Id. p. 4.  Count II reasserts these allegations, and complains about the alleged loss of her "goodwill" from the purported copying of her material without crediting her.  Id.

---

[5] Defendants could not find a copy of the Book online for sale.  Stahl Decl. ¶ 3.

[6] For the convenience of the Court, a copy of Plaintiff's Book chapters that are attached to the Complaint are included in the concurrently-filed RJN as Exhibit 1.

p. 14.  Count III again repeats the prior claims, adding that Defendants have engaged in an act of "unfair competition" by copying and falsely claiming credit for her work. Id. ¶ 37.  She seeks actual damages of $7 million and other remedies.  Id. p. 20-21.

### III.   OVERVIEW OF WORKS AT ISSUE

When ruling on a Rule 12(b)(6) motion, the Court can consider "exhibits submitted with the complaint," as well as "documents which are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.'"  Zella, 529 F. Supp. 2d at 1128, quoting Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.1994); Silas v. Home Box Office, Inc., 201 F. Supp. 3d 1158, 1168 (C.D. Cal. 2016) ("[w]hen specific documents are referenced in a complaint, but not attached to the complaint, a defendant may introduce those documents" on a Rule 12(b)(6) motion).

Here, Plaintiff's Complaint attaches the portions of the Book she claims were infringed.  Cmplt., Ex. C.  Her Complaint also refers to the contents of Defendants' Film.  Cmplt. ¶¶ 2, 13 & pp. 8-11.  Accordingly, Defendants are submitting for the Court's review a copy of the Book chapters included with the Complaint, and a DVD containing the Film.  See RJN, Exs. 1 (Book) and 2 (Film).

### A.   Plaintiff's Book

The excerpts of Plaintiff's Book attached to the Complaint are written in the form of a first-person narrative.  Chapter 5 is a 49-page discourse on Plaintiff's relationship with "Darron," a high school teacher from another city whom she met online.  Ex. 1, pp. 71-73.  This chapter discusses their dating history; it includes her visit, one month into their relationship, to meet his family in rural Washington over Thanksgiving weekend, and it includes a reference to their experience hitting a deer en route.  Id. p. 71-76; Cmplt. p. 8.  The Book has an extended analysis of their whirlwind romance and engagement after five months (Ex. 1, p. 83), and the problems they faced because of his abusive parents, his immaturity, and his lack of boundaries with students, among other things.  Id., pp. 76-100.  After Plaintiff tells

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Darron's employer about his allegedly inappropriate relationships with some of his students, Darron starts seeing another woman, and the relationship with Plaintiff ends.  Id.  Plaintiff writes that Darron later returned to her briefly, and she tried to open his heart to Christ, but he "rejected the light" and betrayed her again.  Id., pp. 108, 114-16.  Chapter 6 discusses Plaintiff's physical and spiritual "healing" from this relationship – through prayer, exercise, and a detailed message to Darron's new fiancée revealing his deceitful behavior.  See, e.g., id., pp. 128.

Chapter 7 of the Book is dedicated to relationship advice, referencing numerous biblical passages to advise "single ladies exactly what to look for in finding relationships that honor Christ."  Id., p. 133.  Chapter 8 also offers specific tips for women to enter dating relationships as believers.  Id., pp. 154-58.

**B.     The Film**

"Get Out" is a feature-length horror movie, starring Allison Williams (best known for her role in the HBO series "Girls") and Daniel Kaluuya.  Unlike the Book, it is entirely fictional.  It begins in a city apartment where Chris, a young African-American photographer, talks to his white girlfriend Rose, as he packs for a weekend trip to meet her family in upstate New York.  Film, Ex. 2, at 6:27.[7]  On the way to the country estate, Rose (who is driving the car) hits a deer.  Id., 10:19.

The rest of the Film depicts the weekend trip, during which Rose's family and their party guests repeatedly confront Chris with comments that implicate his race. E.g. id., 14:25; 17:04; 24:40; 43:21.  The family's black employees are unwelcoming to Chris (e.g., id., 14:47, 17:38, 18:12, 38:46), and he has an odd interaction with the only other African-American man at the gathering, who is there with a much older white woman.  Id., 45:00.  Later, the same man reacts bizarrely when Chris takes his picture, and yells at Chris to "get out!"  Id., 55:28.  The combination of casual racism and odd events makes Chris more and more uncomfortable, and he becomes

---

[7] Citations are to the DVD time code.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  suspicious that something sinister is happening.  Chris convinces Rose they should

2  leave the estate and return to the city.  <u>Id.</u>, 58:40.  But as they start to leave, the

3  family – including Rose – restrains Chris, leaving him tied to a chair in the cellar.

4  <u>Id.</u>, 1:09:10, 1:12:35.  Chris then learns that the family has been engaging in horrific

5  medical practices that include transplanting their older friends' brains into the bodies

6  of young African-Americans – and Chris is to be the next victim.  <u>Id.</u>, 1:22:25.  In a

7  series of violent confrontations, he escapes and is met by his friend Rod, who became

8  worried when Chris did not return home and tracked him down.  <u>Id.</u>, 1:28:13-1:38:21.

9  **IV.   PLAINTIFF'S COPYRIGHT CLAIMS FAIL AS A MATTER OF LAW**

10       Plaintiff's copyright infringement claim requires her to prove "(1) ownership

11  of a valid copyright and (2) copying by the defendant of protectable elements of the

12  work."  <u>CDN Inc. v, Kapes</u>, 197 F.3d 1256, 1258 (9th Cir. 1999); <u>Cavalier v.</u>

13  <u>Random House, Inc.</u>, 297 F.3d 815, 822 (9th Cir. 2002).  Where, as here, there is no

14  allegation or evidence of direct copying, the second element requires Plaintiff to

15  prove <u>both</u> that the Defendants had "access" to the Plaintiff's copyrighted work, and

16  that there is "substantial similarity" of protected expression between the copyrighted

17  work and defendants' work.  <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 481

18  (9th Cir. 2000); <u>see</u> <u>also</u> <u>Chase-Riboud v. Dreamworks, Inc.</u>, 987 F. Supp. 1222,

19  1225 (C.D. Cal. 1997).  Plaintiff cannot meet either requirement.

20  **A.   Plaintiff Has Not Sufficiently Alleged Facts Demonstrating Defendants**

21  **Had Access To Her Work.**

22       Access cannot be shown by "mere speculation or conjecture."  <u>Three Boys</u>,

23  212 F.3d at 482.  An inference or "bare possibility" of access is not sufficient; the

24  plaintiff must allege the defendants had a "reasonable opportunity" to view the

25  allegedly infringed work.  <u>Id.</u>, citing 4 <u>Nimmer on Copyright</u> § 13.02[A], at 13-19

26  (2003)); <u>Sid & Marty Kroft Television Prods., Inc. v. McDonald's Corp.</u>, 562 F.2d

27  1157, 1172 (9th Cir. 1977).  In a case similar to this one, Judge Andre Birotte

28  recently held that the plaintiff's allegation that he sent his Manuscript to various

7

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

literary agents and publishers failed to plead access adequately, because there was no allegation "that Plaintiff sent Defendants his Manuscript, Defendants purchased Plaintiff's Manuscript, or that another individual or group of individuals who possessed the Manuscript gave it to Defendants."  Fillmore v. Blumhouse Prods., LLC, No. 2:16-cv-04348-AB-SS, Dkt No. 94 (C.D. Cal. July 7, 2017), at 8 (granting Rule 12(b)(6) motion to dismiss).  See Ex. 8.

Here, Plaintiff does not allege any facts supporting a claim that any of the Defendants had access to her Book, as required to state a copyright infringement claim.  This is not a case where a plaintiff creator submitted her work to a defendant producer or studio for its review and consideration.  See, e.g., Silas, 201 F. Supp. 3d at 1166.  Instead, Plaintiff claims her self-published Book was, at some unspecified point in time, available on the Internet – but she does not allege that Defendants, or anyone else, ever purchased a copy.  See Cmplt. p. 11.  She also alleges she sent the manuscript to publishers and literary agents (who expressed no interest)[8] – but does not allege that she sent it to any of the Defendants.  These are the kind of allegations that Fillmore correctly held were inadequate to state an access claim.  See Ex. 8, at 8.

Plaintiff also hypothesizes that Defendant Peele "could have" accessed her Book through an attenuated series of inferences – namely, that a publisher who rejected Plaintiff's manuscript (Selena James) allegedly is friends with a writer at Huffington Post (Abrams), and Huffington Post's founder and former owner (Jonah Peretti) is Peele's brother-in-law.  Cmplt. pp. 11-12.  But even Plaintiff admits this theory is pure speculation.  Id. at 11 (Abrams may "possibly be the pathway to my books [sic] connection to Peele," but this is "unverifiable"); Id. at 12 ("Selena could have shared my story") (emphasis added).  A claim of access cannot be sufficiently pled through such a daisy-chain of conjecture.  Three Boys, 212 F.3d at 482; Fillmore, supra; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

---

[8] Id. p. 11 & Ex. D (rejection letter from publisher).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Because Plaintiff fails to allege any plausible manner in which any of the Defendants had access to her work, her copyright claim fails for this reason alone.

**B.      Plaintiff Cannot Meet Her Burden Of Demonstrating Substantial Similarity Of Protected Expression.**

Even if Plaintiff had met her burden as to "access" – which she has not – she cannot demonstrate that the protected expression in the two works is substantially similar.  For this additional reason, her copyright claim should be dismissed.

**1.      The Absence Of Substantial Similarity Can Be Determined By The Court On A Motion to Dismiss.**

Dismissal under Fed. R. Civ. P. 12(b)(6) is proper when a complaint lacks "a cognizable legal theory," or "sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1988). To survive a motion to dismiss, a complaint must allege facts sufficient to raise a right to relief that is above the level of mere speculation, and that is plausible on its face.  Twombly, 550 U.S. at 555.  The Court need not accept as true "unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast as factual allegations."  Zella, 529 F. Supp. 2d at 1127-28.

It is well-established in copyright cases that a court can compare the two works forming the basis of an infringement claim, and dismiss the claim as a matter of law if no reasonable factfinder could find infringement.  See Section III.  As one district court explained, citing to a Ninth Circuit decision, "'[t]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss.'"  Zella, 529 F. Supp. 2d at 1130 (quoting Christianson v. West Pub. Co., 149 F.2d 202, 203 (9th Cir. 1945)).  "For fifty years, courts have followed this rather obvious principle and dismissed copyright claims

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

that fail from the face of the complaint (and in light of all matters properly considered on a motion to dismiss)." Id. at 1130.[9]

In evaluating whether a plaintiff has stated a plausible copyright claim, it is also proper for the Court "to consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201." Zella, 529 F. Supp. 2d at 1128, citing Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988). These include judicial notice of "generic elements of creative works" (Zella, 529 F. Supp. 2d at 1129), "elements that are common to a given genre" (Silas, 201 F. Supp. 3d at 1170), and other "unprotectable elements." Heusey, 2015 WL 12765115, at *4.[10]

Here, by comparing Plaintiff's Book and Defendants' Film, and by considering judicially noticeable facts, this Court can and should find that the two works share – at most – only a few generic, unprotectable attributes, and do not contain protectable expression that is substantially similar as a matter of law.

### 2.    The Works Are Not Substantially Similar.

To determine whether there is substantial similarity of protected expression

---

[9] See also Heusey v. Emmerich, 2015 WL 12765115, at *3 (C.D. Cal. Apr. 9, 2015) (dismissing copyright claim after comparing plaintiff's screenplay and defendant's screenplay and movie about the authorship of works attributed to Shakespeare, finding protectable elements were not similar); Fillmore, supra (Ex. 8), at 10-18 (dismissing infringement claim under Rule 12(b)(6) after comparison); Wild v. NBC Universal, Inc., 788 F. Supp. 2d 1083, 1097 (C.D. Cal. 2011) (same), aff'd, 513 Fed. Appx. 640 (9th Cir. 2013); Silas, 201 F. Supp. 3d at 1171 (granting motion to dismiss); Kullberg v. Pure Flix Entm't LLC, 2016 WL 7324155, at *2 (C.D. Cal. Oct. 12, 2016) (same); Basile v. Sony Pictures Entm't Inc., 2014 WL 12521344, at *2 (C.D. Cal. Aug. 19, 2014) (same); Gadh v. Spiegel, 2014 WL 1778950, *3 n.2 (C.D. Cal. Apr. 2, 2014) (same, collecting cases).

[10] See, e.g., DuckHole Inc. v. NBC Universal Media LLC, 2013 WL 5797279, at *4 (C.D. Cal. Sept. 6, 2013) (taking judicial notice that generic elements of veterinary-themed sitcoms include: (1) settings of an operating room, examination room, and lobby; (2) pets; (3) a comedic tone and; and (4) romantic relationships, because they "can be verified simply by watching television for any length of time"); Fillmore, Ex 8, at 6-7 (taking judicial notice of biblical references, and that dream sequences and the possibility of resurrection are common literary devices).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

sufficient to state a copyright claim, the Ninth Circuit uses an "extrinsic/objective" test to compare the works.  Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994); Kouf v. Walt Disney Films & Television, 16 F.3d 1042, 1045 (9th Cir. 1994); Three Boys Music, 212 F.3d at 485.

The "extrinsic" component tests for similarity of ideas and expression based on objective external criteria; the "intrinsic" component is subjective, and tests for "similarity of expression from the standpoint of the ordinary reasonable observer." Apple Computer, 35 F.3d at 1442.  "On a motion to dismiss, only the extrinsic test is relevant." Heusey, 2015 WL 12765115, at *3.  "Without extrinsic similarity, a copyright claim cannot survive."  Silas, 201 F. Supp. 3d at 1167 (dismissing under Rule 12(b)(6) for lack of similarity in extrinsic elements).

In comparing the works, the court must filter out any portions that are not protected; only "protected expression" is relevant to assess "substantial similarity." See Apple Computer, 35 F.3d at 1446 (party claiming infringement "may place no reliance upon any similarity in expression resulting from unprotectable elements"); Cavalier, 297 F.3d at 822.  After all of the unprotected elements are filtered out, the extrinsic test focuses on whether there are "articulable similarities between the 'plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works.'"  Kouf, 16 F.3d at 1045 (no substantial similarity existed between two works featuring a method to shrink humans in size, and depicting "a life struggle of kids fighting insurmountable dangers."); Gold Glove Prods., LLC v. Handfield, 648 Fed. Appx. 679, 680-81 (9th Cir. 2016) (extrinsic test not met where "setting, mood, and pace of [the works] are obviously different, as is the dialogue"); Fillmore, Ex. 8 at 14 (extrinsic similarity cannot be shown by "high level of generality for similarities" between works or similarities beyond "the confines of protectable expression.").

### a. Any Similarities Between The Book and The Film Are Outside The Scope Of Copyright Protection.

In filtering out unprotectable material, "it is an axiom of copyright law that the

protection granted to a copyrighted work extends only to the particular expression of the idea and never to the idea itself." <u>Sid & Marty Krofft</u>, 562 F.2d at 1163. Furthermore, copyright protection for <u>non</u>-fiction works, like Plaintiff's Book, is limited by the rule that facts are not copyrightable. <u>Harper & Row Publishers, Inc. v. Nation Enters.</u>, 471 U.S. 539, 547 (1985) ("no author may copyright facts or ideas"); 17 U.S.C. § 102. Similarly, the scenes à faire doctrine holds that forms of expression that are "standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." <u>Satava v. Lowry</u>, 323 F.3d 805, 809 (9th Cir. 2003); <u>accord</u> <u>Apple Computer</u>, 35 F.3d at 1443 ("similarities derived from the use of common ideas cannot be protected; otherwise, the first to come up with an idea will corner the market"). "Familiar stock scenes and themes that are staples of literature" – the ideas or scenes that flow naturally from other ideas or basic plot premises – are not protected by copyright. <u>Cavalier</u>, 297 F.3d at 823.

Plaintiff appears to believe that, because she has written a factual account of a difficult interracial relationship, she is entitled to a monopoly on any work depicting such relationships, even in fictional works, and even if the events are expressed in entirely different ways. This view is flatly contrary to the hornbook rule that copyright does not protect facts or information. <u>Harper & Row</u>, 471 U.S. at 547; <u>Feist Publs., Inc., v. Rural Telephone Srvs. Co.</u>, 499 U.S. 340 (1991). In addition, Ninth Circuit cases make clear that copyright provides "no monopoly" on unprotectable elements. <u>Ets-Hokin v. Skyy Spirits, Inc.</u>, 225 F.3d 1068, 1082 (9th Cir. 2000). <u>See</u> <u>also</u> <u>Berkic v. Crichton</u>, 761 F.2d 1289, 1293 (9th Cir. 1985) (no protection for idea of "criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants" and a young professional who investigates and exposes the criminals); <u>Olson v. NBC</u>, 855 F.2d 1446, 1450 (9th Cir. 1988) (common idea like a "group action-adventure series designed to show Vietnam veterans in a positive light" not protectable); <u>Rice v. Fox Broadc. Co.</u>, 330 F.3d 1170, 1176 (9th Cir. 2003) (no similarity between two

shows about magic tricks because "there are only a discrete number of ways to express a magician revealing the secrets behind magic tricks and illusions while disguising his identity."); <u>Gold Glove</u>, 648 Fed. Appx. at 680-81 ("shared themes" of "father-daughter reconciliation, the breaking down of emotional barriers, the importance of family, and pitting old school ways against new ones" are "commonplace in father-daughter stories and in sports movies"); <u>8th Wonder Entm't, LLC v. Viacom Int'l, Inc.</u>, 2016 WL 6882832, at \*5 (C.D. Cal. Nov. 22, 2016) (filtering out as unprotectable "the general idea of a reality television show about women in relationships with famous individuals; a reality television show about the families of hip hop artists; the factual biographies of [show participants]; general themes of relationship difficulties, legal challenges, troubled family dynamics, female friendships, and the burdens of the lifestyles of the rich and the famous.").

Plaintiff has not identified <u>any</u> protectable similarities between the Book and the Film. The laundry-list of supposed similarities alleged in her Complaint consists entirely of facts, generic ideas, and stock elements that are common and unprotectable. Cmplt. pp. 8-10. For example, Plaintiff does not own the right to depict the exceedingly common occurrence of automobiles colliding with animals – an event that happens <u>over one million times a year</u> in the U.S., and is particularly prevalent in rural areas. <u>See</u> RJN 8. Similarly, interracial romantic relationships are common, and have been the subject of numerous literary and film works, as well as biographies and other nonfiction works. RJN 11, 12. Nor can any copyright claim possibly be based on the fact that both the Book and the Film depict a family with two siblings, reference a dog,[11] or include "meeting the parents" of a romantic interest for the first time, even if it includes an uneasy dynamic between a character and the family of his or her significant other. These stock plot devices were used in

---

[11] Over 13 million American households have two children; roughly 54 million have a dog. RJN, 9, 10.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

innumerable expressive works long before Plaintiff's Book.[12]  RJN 13, 14.

**b.  There Are No Protectable Elements In The Two Works That Are Substantially Similar.**

After all of the non-protectable elements are filtered out, the Court must compare what is left, to evaluate whether there are substantial similarities.  Here, after removing the unprotected facts, ideas and generic elements and plot devices, it is clear that the two works are <u>not</u> substantially similar – or even remotely similar.

In making this comparison, courts disregard general lists of similarities like the one found in Plaintiff's Complaint (pp. 8-10).  Such lists are "inherently subjective and unreliable," particularly where "the list emphasizes random similarities scattered throughout the works."  <u>Litchfield v. Spielberg</u>, 736 F.2d 1352, 1356 (9th Cir. 1984); <u>accord</u> <u>Cavalier v. Random House, Inc.</u>, 297 F.3d 815, 825 (9th Cir. 2002); <u>Shame on You Prods. v. Banks</u>, 120 F. Supp. 3d 1123, 1151 (C.D. Cal. 2015).  Again, the Court must compare the two works' extrinsic elements – the "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events," <u>Kouf</u>, 16 F.3d at 1045.  Only "concrete" similarities in the objective, expressive details of the work can satisfy the test; abstract or superficial similarities must be disregarded.  <u>Zella</u>, 529 F. Supp. 2d at 1135, <u>quoting</u> <u>4 Nimmer on Copyright</u> § 13.03[A][1][b], at 13–42 (2003).

Here, such a comparison demonstrates that the two works at issue are objectively dissimilar.  Because this fatal defect in Plaintiff's claims cannot be cured by amending her Complaint, dismissal should be with prejudice.  <u>See</u> <u>Chaset v. Fleer/Skybox Int'l</u>, 300 F.3d 1083, 1087-88 (9th Cir. 2002); <u>Heusey</u>, 2015 WL

---

[12] To cite just one example, most of the alleged "similarities" claimed by Plaintiff here are found in the iconic 1967 film "Guess Who's Coming to Dinner," about a white woman who introduces her liberal parents to her African American boyfriend, and the ensuing family tensions.  <u>See</u> RJN 12-14.  The Bible also contains references to disapproving in-laws in somewhat similar circumstances.  RJN 14; Ex. 14.  Other works containing all of Plaintiff's alleged similarities are cited in the RJN.

**Davis Wright Tremaine** LLP
865 S. Figueroa St, Suite 2400
Los Angeles, California 90017-2566
(213) 633-6800
Fax: (213) 633-6899

12765115, at *3 ("[i]f a plaintiff fails to establish substantial similarity, a court may grant a motion to dismiss with prejudice.").

### Plot and Sequence of Events:

In evaluating substantial similarity, "plot is defined as the 'sequence of events by which the author expresses his theme or idea' that is sufficiently concrete to warrant a finding of substantial similarity if it is common in both works." Zella, 529 F. Supp. 2d at 1135, quoting 4 Nimmer on Copyright § 13.03[A][1][b], at 13-42 (2003). "[G]eneral plot ideas are not protected by copyright law[.]" Berkic, 761 F.2d at 1293. Instead, the substantial similarity test compares "the actual concrete elements that make up the total sequence of events and the relationships between the major characters," id. at 1293, based on "the actual objective details of the works." Silas, 201 F. Supp. 3d at 1173; accord, Kullberg, 2016 WL 7324155, at *2 (although works shared "the general premise of an atheist professor challenging a Christian student's religious beliefs," the plots were not substantially similar because they "tell materially different stories").

Merely describing the two works at issue here demonstrates their differences: Plaintiff's Book is a nonfiction, self-help work; the Film is a fictional horror movie. Moreover, even if the events Plaintiff describes in her Book chapters are considered a "plot," they are objectively entirely different from the Film's plot, both overall and with respect to concrete, specific details.

The Book discusses Plaintiff's dating history, relationships, and her advice to readers about staying true to their religious beliefs. Book, Ex. 1. It purports to describe actual events in her life – primarily, her on-again, off-again long-distance relationship with a high school teacher, Darron, whom she apparently suspects of being a pedophile because of his close relationship with some of his students. Id., pp. 86-89, 96-103. Her relationship with Darron ends after she expresses her concerns to his employer, and he starts dating someone else, although he sees her again for a brief period after they break up. After Darron finally ends his

DEFENDANTS' MOTION TO DISMISS
4817-0110-7531v.10 0103245-000008

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

relationship with Plaintiff and becomes engaged to the other woman, Plaintiff contacts his fiancée to report his deceptive behavior. Id., p. 128.

The Film, in contrast, is a suspenseful horror move, with racial overtones. It focuses on Chris and Rose, a seemingly happy couple. Unlike Plaintiff and Darron, they live in the same city; they are not engaged; and there is no indication either Chris or Rose suspects the other of infidelity or of having inappropriate relationships with teenagers. They have been dating for five months when they take a fateful weekend trip to meet Rose's parents in upstate New York. Film, Ex. 2, 15:45. During the visit, Rose's family and friends subject Chris to comments about his race that leave him feeling increasingly uncomfortable. E.g. id., 14:25; 17:04; 24:40; 43:21.[13] When Chris tries to convince Rose to leave with him, she is revealed to be part of a family plot to kidnap young African Americans and transplant their white friends' brains into the victims' bodies. Ex. 2, at 1:09:10, 1:22:25. Chris is targeted as the next victim. Id. But in a series of violent confrontations, he escapes and is met by his friend Rod, who has tracked him down. Id., 1:28:13-1:38:21.

Needless to say, nothing remotely similar to this fictional nightmare is discussed in Plaintiff's nonfiction Book.

The single event that appears to be the primary focus of Plaintiff's claim of "copying" consists of a few sentences in the Book, where she relates an experience, one month[14] after she and Darron begin dating, when they hit a deer while driving to his family's home for the Thanksgiving weekend. But even the "deer incidents" are

---

[13]By way of comparison, Plaintiff says that she thought Darron's family was "sweet" during their initial visit. Ex. 1, p. 76.

[14] Plaintiff's Complaint falsely claims that both works depict the "deer incident" as taking place after the couples had been dating for "five months." Cmplt. pp. 9-10. In fact, the Book expressly states Plaintiff and Darron "had only been dating a month" when their deer accident happened. Ex. 1, p. 75. Plaintiff describes the weekend with his family in positive terms, noting thereafter, she and Darron "ended up spending almost every weekend" at his parents' home. Ex. 1, p. 75.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

not depicted in the same way.  In the Book's brief mention of the collision, Plaintiff notes Darron's calm demeanor during the accident, which causes her to trust him. Ex. 1, pp. 32-33.[15]  The incident is never mentioned again in the Book.  In the Film, the deer accident leads to a run-in with a police officer, who asks Chris for identification even though Rose was driving, causing Rose to suggest that the officer is racist. Film, Ex. 2, 10:19-12:09.  When the couple arrives at the house and relates the experience, Rose's father discusses his loathing of "deer" as "scum," in a manner that raises questions about whether he is as tolerant and open-minded as he first appears. Id., 15:11.  And in the Film – unlike the Book – a deer head makes a return appearance, used by Chris in his effort to escape the house. Id., 1:29:20.  In sum, a deer collision is too basic to be protected, and the works' expression of the incidents differs significantly.

The only other alleged commonalities in the "plots" for the two works are far too generic to qualify for copyright protection.  Plaintiff cannot base an infringement claim on the fact that a character in each work has a family that includes two parents and a sibling; both works include a dog;[16] there is an undefined racial undertone to a work that involves a relationship between an interracial couple; or that the couples faces family tensions.  Such "general" plot elements are unprotected. Berkic, 761 F.2d at 1293; Funky Films, Inc. v. Time Warner Entert. Co., 462 F.3d 1072, 1081 (9th Cir. 2006) (no substantial similarity although "both works share certain plot similarities").  Where, as here, the plots are so completely divergent in their "actual concrete elements," Berkic, 761 F.2d at 1293, there is no substantial similarity.

**Setting:**

The setting of the two works is entirely different, both physically and

_____

[15] In the Book, the deer accident sends Darron's car into "a full 360 spin," which does not happen in the Film. Book, Ex. 1, p. 75; Film, Ex. 2, 10:19.

[16] In the Book, Plaintiff refers to the fact that her ex's parents had a dog (Book, Ex. 1, p. 76); in the Film, Chris has a dog that he leaves with Rod. Film, Ex. 2, 9:24.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

temporally.  Plaintiff's Book involves allegedly true events that take place in her life, apparently when she was living in Washington State.  Cmplt. p. 8; Book, Ex. 1, p. 77.  Events she describes take place at the high school where Darron is a teacher; at his family's home; at her workplace and church; and in restaurants and bars.

In contrast, the Film begins (briefly) in New York City before continuing in upstate New York, at a large country estate owned by an obviously wealthy couple.  Film, Ex. 2.[17]  The final 90 minutes of the 104-minute Film takes place almost entirely at the estate.  Id., 13:35-1:44:03.

**Pace**:

This extrinsic element considers the works' "timeline." Silas, 201 F. Supp. 3d at 1181.  Here, too, the works are not at all similar. The Book focuses on events that, according to Plaintiff, largely took place over roughly a two-year period.  Book, Ex. 1, p. 131.  In contrast, the Film takes place over a single weekend.  The vast majority of the action – from the time Chris and Rose arrive at her parents' estate to the end of the Film – takes place in a 36-hour period.  Film, Ex. 2, 13:35.

**Theme and Mood:**

The Book is Plaintiff's first-person recitation of events in her life, interspersed with religious quotations and her advice to readers about dating in a manner consistent with Christian values.  It has the mood of a typical self-help/tell-all book.

The Film, in contrast, offers nothing that could be considered spiritual guidance or dating advice.  It has the mood of a classic horror film, gradually ratcheting up the tension with scenes that suggest peril, but leave the primary characters unharmed, at least for the moment.  E.g., Film, Ex. 2, at 0:55 (abduction of

---

[17] There are a few other settings, all appearing only briefly.  One scene near the beginning of the Film depicts a young African-American man walking in an unidentified suburban neighborhood. Film, Ex. 2, 0:55. There are also short scenes depicting Chris's friend Rod at the airport (where he works for TSA) and at a police station; Chris and Rose driving to the estate; and Chris trapped in a hypnotic, dream-like place. E.g., id., 9:01; 10:15; 35:18; 1:15:40.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

seemingly minor character); 28:20 (Chris has a frightening dream); 30:10 (groundskeeper's unusual behavior); 35:18 (Chris is hypnotized, ostensibly to quit smoking); 48:20 (party goes silent after Chris walks away); 55:28 (African-American man at party reacts violently to camera flashbulb).  The increasingly creepy and suspenseful events at the estate are punctuated by the sudden, shocking revelations about the true intentions of Rose and her family.  Id., 1:09:10; 1:22:25.  The Film builds to its climax when Chris tries to escape the estate, various characters are gruesomely killed, and he is finally rescued.  Id., 1:28:13-1:38:21.

Although both works address issues related to relationships, Plaintiff does not even attempt to identify any overlapping protected expression.  Virtually every work premised on a romantic "relationship" will include some discussion about family members, but that is not enough to establish substantial similarity.  "[T]here is no protection for … themes that flow necessarily from a basic premise."  Silas, 201 F. Supp. 3d at 1180, citing Olson, 855 F.2d at 1451 and Cavalier, 297 F.3d at 823; see also Handfield, 648 Fed. Appx. at 680-81 ("commonplace" themes such as "father-daughter reconciliation, the breaking down of emotional barriers, the importance of family, and pitting old school ways against new ones" are "not original, protectable elements"); 8th Wonder Entm't, LLC, 2016 WL 6882832, at *6 (general themes such as "knowing when to let love go" not protectable).

Moreover, the works at issue here address relationships, including interracial relationships, in entirely dissimilar ways.  The Book's premise is that women who are interested in dating must be cautious and stay true to their religious beliefs.  E.g., Ex. 1, pp. 154-59.  Although Plaintiff accuses her ex-boyfriend and his mother of being racists (e.g., Cmplt. p. 9), there are no specific examples or discussion of racist behavior in the Book itself.  But a primary theme of the Film is that racism is ever-present, even among seemingly liberal-minded individuals.

**Dialogue:**

Copyright law does not protect "fragmentary words and phrases" or "forms of

expression dictated solely at functional considerations." Stern v. Does, 978 F. Supp. 2d 1031, 1040 (C.D. Cal. 2011) (citation omitted), aff'd sub nom. Stern v. Weinstein, 512 Fed. Appx. 701 (9th Cir. 2013). Accordingly, "for a plaintiff to demonstrate substantial similarity of dialogue, it must show 'extended similarity of dialogue.'" Silas, 201 F. Supp. 3d at 1181, quoting Olson, 855 F.2d at 1450; accord, Heusey, 2015 WL 12765115, at *7.

Here, Plaintiff does not even allege that the Film contains any dialogue similar to that in her Book, nor could she plausibly do so. Comparing the Book and the Film makes clear that there is no similar dialogue.   Exs. 1, 2.

**Characters:**

There is virtually no overlap, much less "substantial similarity," between any character in the Film and anyone referenced in the Book. Indeed, Plaintiff cannot show any person referenced in her work is so unique as to be copyrightable; but even if she could meet this standard, it is plain from the face of the works that the characters in the Film are quite different from the individuals described in the Book.

As an initial matter, characters are not copyrightable under Ninth Circuit law unless they are "sufficiently delineated" and "especially distinctive." DC Comics v. Towle, 802 F.3d 1012, 1021 (9th Cir. 2015). Moreover, "[w]hen analyzing whether two protectible characters are substantially similar, courts require a very high degree of similarity between characters." Silas, 201 F. Supp. 3d at 1177 (emphasis added). "[O]nly protectible elements standing alone may be compared when determining substantial similarity." Id., citing Cavalier, 297 F.3d at 822. Mere similarity in general character traits is insufficient. Silas, 201 F. Supp. 3d at 1177, 1179 (finding no substantial similarity between characters that "are both well-dressed football players who are sexually promiscuous, drive fancy cars, and have a cocky attitude."). Similarity must lie in the characters' concrete attributes, and even minor differences in occupation or romantic status can defeat claims of similarity. Id. at 1178 (similarity absent in part because one character was an active professional football

player who owns a nightclub, and the other was a retired professional football player who worked for a financial management company).

Plaintiff's Book is largely about her.  She describes herself as a single mother of four teenagers, who was "going to college full time" and 'working a night shift." Book, Ex. 1, p. 71.  The primary other "character" discussed in the Book chapters is her ex-fiancé, Darron, a high school teacher and coach who lives in a city three hours away from her.  Id. at 71-74.  Plaintiff is black; Darron is Caucasian.  Cmplt. p. 9. The only other person discussed in any detail is Darron's mother, who is described initially as a good cook, and thereafter largely in critical terms.  Book, Ex. 1, pp. 76, 78-81, 91-92.  Plaintiff briefly references the fact that Darron's family – like countless others – included a mother, father, and sibling, and the family had a dog (Cmplt. p. 8), but none of these descriptions provide any unique characteristics about any of the individuals that would support a copyright claim.  See, e.g., Walker v. Time Life Films, Inc., 784 F.2d 44, 49-50 (2d Cir. 1986) (in works about NYPD, depiction of central characters as "third- or fourth-generation Irish policemen who live in Queens and frequently drink" not protectable).

Moreover, other than the fact that Plaintiff was in an interracial relationship, nothing in the description of her or Darron has any similarity to the main characters in the Film.  Chris is a photographer, not a teacher.  He is African-American.  Rose is a single young white woman, without children.  Neither is depicted as religious. They are not engaged, and there is no discussion of marriage.

The Film has several other featured characters.  Chris' friend Rod is an overweight TSA agent, who is depicted in somewhat goofy fashion but is redeemed at the end when his suspicions turn out to be well-founded.  Rose's mother is a charming psychologist, who likes to hypnotize patients (seemingly for their benefit, although it turns out to have nefarious purposes).  Rose's father is a brain surgeon, who also uses his talents to a sinister end.  Her brother is depicted as on-edge, unfriendly, and impolite.  The African-American housekeeper and groundskeeper are

DEFENDANTS' MOTION TO DISMISS
4817-0110-7531v.10 0103245-000008

**Davis Wright Tremaine** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

portrayed as mentally unbalanced, and under the tight control of Rose's parents. None of these characters bears any resemblance to anyone described in the Book, much less the "very high degree of similarity" in distinctive elements required to show substantial character similarity.

In sum, a review of the two works demonstrates the Film is exceedingly different from the Book with respect to every extrinsic element. Because Plaintiff cannot show that the two works have substantial similarity of protectable expression, her copyright claim fails as a matter of law, and should be dismissed with prejudice.

## V. TO THE EXTENT PLAINTIFF IS ATTEMPTING TO ASSERT A "REVERSE PASSING OFF" CLAIM, IT IS LEGALLY BARRED.

Plaintiff's second cause of action, although also titled as a claim under federal copyright law (Cmplt. p. 14),[18] appears instead to complain about the fact that she and her Book are not credited in the Film.[19]  To the extent that Plaintiff is inartfully attempting to claim a "reverse passing-off" claim, it also fails as a matter of law.

Reverse-passing-off "occurs when one party obtains a second party's goods, removes the second party's name, and then markets the product under its own name." Aagard v. Palomar Builders, 344 F. Supp. 2d 1211, 1217 (E.D. Cal. 2004).  These allegations parallel Section 43(a) of the Lanham Act, which prohibits the use in commerce of "any false designation of origin … which is likely to cause confusion, or to cause mistake, or to deceive … as to the origin, sponsorship, or approval of []

---

[18] As explained above, Plaintiff cannot state a claim for copyright infringement, because she has not adequately pled Defendants had access to her Book, and the works on their face are substantially dissimilar.  See Section IV.

[19] Plaintiff's second count alleges, among other things, that Defendants' alleged use of her Book "is likely to cause confusion … within the faith oriented film industry" over the origin of the works.  Id. ¶ 30.  Her third count appears intended to assert some kind of failure to credit claim.  E.g., Cmplt. ¶ 37 (alleging Defendants intended to "create a belief that they created an amazing work originated 'from the mind of Jordan Peele,' which is a false assessment based on the facts provided").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

goods, services, or commercial activities[.]"  15 U.S.C. § 1125(a)(1)(A).

The U.S. Supreme Court has held that a plaintiff <u>cannot</u> maintain a reverse-passing-off claim based on a defendant's purported use of the plaintiff's ideas or "communicative products," like the Book here.  <u>Dastar Corp. v. 20th Century Fox Film Corp.</u>, 539 U.S. 23 (2003).  In <u>Dastar</u>, the defendant purchased videotapes of a television series called "Crusade in Europe" ("Crusade") that had fallen into the public domain.  Defendants edited and repackaged the series, and retitled it "World War II Campaigns in Europe" ("Campaigns").  <u>Id.</u>  Although Campaigns retained much of Crusade's original content, there was no reference to Crusade in the credits. <u>Id.</u> at 27.  The plaintiffs sued, claiming that the failure to credit Crusade violated Section 43(a) of the Lanham Act.  <u>Id.</u>  Like Plaintiff here, the plaintiffs in <u>Dastar</u> argued that by "marketing and selling Campaigns as its own product without acknowledging its nearly wholesale reliance on the Crusade television series," the defendant was "likely to cause confusion" about the work's origin.  <u>Id.</u> at 31.

The Supreme Court rejected the plaintiffs' claim, however, finding the Lanham Act's unfair competition provisions protects "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."  <u>Id.</u>, 539 U.S. at 37.  Any other interpretation of that phrase, the Court reasoned, "would not only stretch the text, but [] would be out of accord with the history and purpose of the Lanham Act and inconsistent with precedent."  <u>Id.</u> at 32.  The Court also refused to create an exception to this rule for communicative products – those valued "for the intellectual content that [they] convey."  <u>Id.</u> at 33. Any other interpretation would "conflict with the law of copyright, which addresses that subject specifically."  <u>Id.</u>

Subsequent decisions have made clear that <u>Dastar</u> bars reverse-passing-off claims based on a defendant's alleged use of a plaintiff's copyrighted work, like the Book here.  <u>See</u>, <u>e.g.</u>, <u>Williams v. UMG Recordings</u>, 281 F. Supp. 2d 1177, 1185 (C.D. Cal. 2003) (dismissing plaintiff's suit for "credit" after film incorporating his

copyrighted narration script excluded him from the film's credits, based on <u>Dastar</u>); <u>A Slice of Pie Prods. v. Wayans Bros. Entm't</u>, 392 F. Supp. 2d 297, 312 (D. Conn. 2005) (rejecting claim that defendants violated Lanham Act by purportedly misrepresenting the origin of their film "White Chicks").  Consequently, regardless of how it is labeled,[20] Plaintiff's Second Count is barred as a matter of law.

## VI.    PLAINTIFF'S UNFAIR COMPETITION CLAIM FAILS FOR THE SAME REASONS AS HER OTHER CLAIMS, AND IS PREEMPTED

Plaintiff's third count, which purports to assert a "copyright-unfair competition" claim, simply mashes together the allegations in her two other defective claims, and fails for the same reasons.  But whether it is intended to be another variety of copyright claim, or another defective reverse-passing off claim, it fails for yet another reason:  it is preempted by the Copyright Act, which expressly preempts all claims that are "equivalent to" rights under copyright law.  As the Act provides:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by [17 U.S.C.] section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 … are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).  Thus, claims are preempted if (1) "the rights that a plaintiff asserts" are "'rights that are equivalent' to those protected by the Copyright Act," and (2) "the work involved must fall within the 'subject matter' of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103."  <u>Kodadek v. MTV Networks</u>, 152 F.3d 1209, 1212 (9th Cir. 1998); <u>Jules Jordan Video, Inc. v. 144942 Canada Inc.</u>, 617 F.3d

---

[20] "[A]ny protection for the misappropriation of [] content comes from the Copyright Act, not from the Lanham Act."  <u>Slice of Pie</u>, 392 F. Supp. 2d at 313.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1146, 1152 (9th Cir. 2010) ("[s]ection 301 of the Act provides for exclusive jurisdiction over rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in the Act.").

Plaintiff's unfair competition allegations clearly fall squarely within the rights encompassed by the Copyright Act and are preempted.  On the first preemption element, her claim that she is the rightful author of the works at issue is not just "equivalent to" a copyright claim; it is precisely the <u>same</u> claim.  <u>Kodadek</u>, 152 F.3d at 1212 (unfair competition claim preempted by Copyright Act).  On the second element, there is no doubt the works at issue fall within the Copyright Act's "subject matter": books and movies indisputably fall within the ambit of copyright protection, which extends to all "original works of authorship fixed in any tangible medium of expression," including "literary works" and "motion pictures."  17 U.S.C. § 102(a)(1), (6); 17 U.S.C. § 101 ("[l]iterary works," by definition, include books).

Accordingly, any non-copyright claim Plaintiff might raise related to the alleged misappropriation of her Book by Defendants is preempted by 17 U.S.C. § 301.  This claim also should be dismissed with prejudice.

## VII.   CONCLUSION

For all the reasons set forth above, this Court should dismiss Plaintiff's Amended Complaint with prejudice,[21] and should award Defendants their costs and attorneys' fees pursuant to 17 U.S.C. § 505, in an amount to be determined.

DATED:  July 12, 2017            By:_____ */s/ Kelli L. Sager*_____
                                             Kelli L. Sager

---

[21] Where, as here, no amendment could cure the defects in the complaint, dismissal with prejudice is warranted.  <u>See</u> <u>Wages v. IRS</u>, 915 F.2d 1230, 1235 (9th Cir. 1990).  Thus, where a copyright plaintiff "fails to establish substantial similarity, a court may grant a motion to dismiss with prejudice."  <u>Heusey</u>, 2015 WL 12765115, at *3; <u>see</u> <u>Gallagher v. Lions Gate Entm't Inc.</u>, 2015 WL 12481504, at *2 (C.D. Cal. Sept. 11, 2015) (dismissal with prejudice is appropriate "when substantial similarity is absent after a review of the works at issue").

DEFENDANTS' MOTION TO DISMISS
4817-0110-7531v.10 0103245-000008

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899