**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
ERIC M. STAHL (State Bar No. 292637)
  ericstahl@dwt.com
DIANA PALACIOS (State Bar No. 290923)
  dianapalacios@dwt.com

Attorneys for Defendants
JORDAN PEELE, BLUMHOUSE
PRODUCTIONS, LLC, QC ENTERTAINMENT,
AND NBCUNIVERSAL MEDIA, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

TIA GRIFFIN,

                    Plaintiff,

        vs.

JORDAN PEELE, BLUMHOUSE
PRODUCTIONS, QC
ENTERTAINMENT, AND NBC
UNIVERSAL MEDIA, LLC,

                    Defendants.

Case No. 5:17-cv-01153-JGB-KK

**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS (F.R.C.P. 12(b)(6))**

Hearing Date:    January 22, 2018
Time:            9:00 a.m.
Courtroom:       1

[Notice Of Motion And Motion To Dismiss; Declaration Of Eric M. Stahl With Exs. 1, 3-17; Defendants' Index Of Exhibits; and [Proposed] Order Filed Concurrently.]

Pursuant to Federal Rule of Evidence 201, Defendants Jordan Peele, Blumhouse Productions, LLC, QC Entertainment and NBCUniversal Media, LLC ("Defendants") respectfully request that this Court take judicial notice of the following materials and facts submitted in support of Defendants' concurrently filed Motion To Dismiss Plaintiff's Second Amended Complaint ("SAC"):

**Works At Issue**

1.     Certified deposit copy of Plaintiff's full manuscript "The Covering," as deposited with the U.S. Copyright Office in connection with registration TXu001922667, attached as Exhibit 1 to the Declaration of Eric M. Stahl ("Stahl Decl.").

2.     The full-length feature film "Get Out," which is referenced in Plaintiff's Second Amended Complaint ("SAC"), a copy of which has been previously filed. See Stahl Decl. ¶ 6; Dkt. No. 14.

**Public Court Records**

3.     Complaint filed in Griffin v. Peele, et al., Riverside County Superior Court, RIC1703920 ("State Court Action"), which is attached as Exhibit 4 to the Stahl Decl.

4.     First Amended Complaint filed in the State Court Action, which is attached as Exhibit 5 to the Stahl Decl.

5.     Order sustaining Demurrer dated June 7, 2017, in the State Court Action, which is attached as Exhibit 6 to the Stahl Decl.

6.     Order denying Special Motion To Strike dated June 7, 2017, in the State Court Action, which is attached as Exhibit 7 to the Stahl Decl.

7.     July 7, 2017 Order granting motion to dismiss in Fillmore v. Blumhouse Productions, et al., (C.D. Cal. July 7, 2017), Case No. 2:16-cv-04348-AB-SS, which is attached as Exhibit 8 to the Stahl Decl.

1

8.      Complaint, dismissal, and docket from the case <u>Christian v. Kensington</u>, Case No. 14-cv-02301 (M.D. Tenn.) (cited in the SAC), which are attached as Exhibit 15 to the Stahl Declaration.

9.      First amended complaint, dismissal, and docket from the case <u>New York Periodical Distributors, Inc. v. Kensington Publishing</u>, Case No. 5:05-cv-66 (N.D.N.Y.) (cited in the SAC), which are attached as Exhibit 16 to the Stahl Declaration.

10.      Complaint, dismissal, and docket from the case <u>Thompson v. Kensington Publishing</u>, Case No. 14-cv-02949-CM (S.D.N.Y.) (cited in the SAC), which are attached as Exhibit 17 to the Stahl Declaration.

**Facts Not Subject to Reasonable Dispute**

11.      Automobile collisions with deer are a common occurrence, particularly in rural areas.

12.      Millions of U.S. families consist of two parents and two children.

13.      Millions of U.S. households own at least one dog.

14.      Interracial romantic relationships are increasingly common.

**Generic Literary Elements**

15.      Interracial romantic relationships have been depicted in many expressive works.

16.      A romantic couple "meeting the parents for the first time" is a common occurrence, and a stock plot device in expressive works.

17.      Conflict with a significant other's family is a common element in many expressive works.

## I.      JUDICIAL NOTICE AND INCORPORATION OF COPYRIGHTED WORKS REFERENCED IN THE SECOND AMENDED COMPLAINT IS APPROPRIATE.

In granting Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"), this Court took judicial notice of the two copyrighted works at

2

issue in this case – Plaintiff's book, "The Covering" (the "Book") and Defendants' motion picture "Get Out" (the "Film").  The SAC again is based on these two works, and judicial notice is again appropriate, for the following reasons.

On a motion to dismiss, a court may consider the content of materials referred to in the operative complaint, even if the plaintiff neglects to attach the materials. See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (on Rule 12 motion court may consider "documents incorporated into the complaint by reference"); Knievel v. ESPN, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (Rule 12 motion properly granted by considering web pages referred to in complaint and attached to defendant's motion).  As one court explained in an analogous copyright case, when ruling on a Rule 12(b)(6) motion, courts can consider "exhibits submitted with the complaint," as well as "documents which are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.'"  Zella v. E.W. Scripps Co., 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007) (quoting Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)); see also Fillmore, (C.D. Cal. July 7, 2017), Case No. 2:16-cv-04348-AB-SS.

Such materials commonly are considered through a request for judicial notice pursuant to Federal Rule of Evidence 201.  For example, in Campbell v. Walt Disney Co., 718 F. Supp. 2d 1108 (N.D. Cal. 2010), the district court granted the defendant's motion to dismiss a copyright claim, holding that the defendant's motion picture, "Cars," was not substantially similar to the plaintiff's screenplay.  Id. at 1116.  To reach this conclusion, the court took judicial notice of the contents of the film and the screenplay, which were referenced in (but not attached to) the complaint.  Id. at 1111 n.3.  Similarly, in Sobhani v. @radical.media, Inc., 257 F. Supp. 2d 1234 (C.D. Cal. 2003), the court took judicial notice of the content of the motion picture "Cast Away" which was the subject of the plaintiff's copyright claim.  Id. at 1236 n.1.  See also Silas v. Home Box Office, Inc., 201 F. Supp. 3d 1158, 1168 (C.D. Cal. 2016) ("[w]hen specific documents are referenced in a complaint, but not attached to the

complaint, a defendant may introduce those documents" on a Rule 12(b)(6) motion); Burnett v. Twentieth Century Fox, 491 F. Supp. 2d 962, 966 (2007) (considering content of TV show that formed basis of copyright claim but was not attached to complaint); Daly v. Viacom, Inc., 238 F. Supp. 2d 1118, 1121-1122 (N.D. Cal. 2002) (considering video referenced in, but not attached to, complaint); Zella, 529 F. Supp. 2d at 1139 (same); Fillmore, (C.D. Cal.), Case No. 2:16-cv-04348-AB-SS (same).

Here, as in the FAC, Plaintiff's SAC references the Book, and incorporates by reference excerpts previously attached to the FAC. See SAC ¶¶ 1, 10-13 & pp. 12-15, 28; Dkt. No. 42. She also references Defendants' Film, which she identifies as the allegedly infringing work, but which was not submitted with the SAC. See SAC ¶¶ 2, 14 & pp. 12-15. Because the content of the Film and Book are referenced in the SAC, and Plaintiff necessarily relies on these works as the basis for her claims, these materials are incorporated by reference in the SAC and are again proper subjects of judicial notice. E.g., Campbell, 718 F. Supp. 2d at 1111 n.3; Sobhani, 257 F. Supp. 2d at 1236 n.1.

## II.   PUBLICLY AVAILABLE COURT RECORDS ARE THE PROPER SUBJECT OF JUDICIAL NOTICE

Under Rule 201, the court can take judicial notice of court filings and orders in other cases. See, e.g., Reyn's Pasta Bella, LLC v. Visa USA, Inc. 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings); Burnham v. Ruan Transp., No. SACV 12–0688 AG (ANx), 2013 WL 4564496, *2 (C.D. Cal. Aug. 16, 2013) ("courts may take judicial notice of pleadings and court orders that are matters of public record"). Here, Defendants seek judicial notice of the complaint, first amended complaint, and orders from the State Court Action previously filed by Plaintiff in connection with the same works at issue here. Similarly, the recent order granting the motion to dismiss in Fillmore is a public record filed in a federal action. This Court took judicial notice of these same public

records in its order dismissing Plaintiff's FAC (Dkt. No. 51, at 6) and should do so again on the current Motion to Dismiss.

Defendants also seek judicial notice of additional public court filings in three other cases specifically referred to in the SAC, all involving Kensington Publishing. SAC p. 7. These cases are <u>Christian v. Kensington</u>, Case No. 14-cv-02301 (M.D. Ten.); <u>New York Periodical Distributors, Inc. v. Kensington Publishing</u>, Case No. 5:05-cv-66 (N.D.N.Y.); and <u>Thompson v. Kensington Publishing</u>, Case No. 14-cv-02949-CM (S.D.N.Y.). Defendants seek judicial notice of the operative complaint, the dismissal, and the publicly available court docket in each case (which are attached as Exhibits 15-17, respectively, to the Stahl Declaration). These filings are properly subject to judicial notice, both because they are public court records, <u>Reyn's Pasta Bella, LLC</u>, 442 F.3d at 746 n.6, and because the cases are referenced in the SAC. <u>Zella</u>, 529 F. Supp. 2d at 1128.

## III. THE COURT MAY TAKE JUDICIAL NOTICE OF FACTS THAT ARE NOT SUBJECT TO REASONABLE DISPUTE.

Federal Rule of Evidence 201(b) provides that a fact is subject to judicial notice when it is not "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; <u>see also</u> <u>Heusey v. Emmerich</u>, No. CV 14-06810-AB (EX), 2015 WL 12765115, at *4 (C.D. Cal. Apr. 9, 2015) (taking judicial notice of "occupations and lifetimes of historical characters, family trees, historical events, theories commonly-held by historians, and the political atmosphere of the Elizabethan era" because these facts could be "accurately and reasonably determined from sources whose accuracy cannot reasonably be questioned"); <u>Weiss v. DreamWorks SKG</u>, No. CV1402890DDPAJWX, 2015 WL 12711658, at *4 (C.D. Cal. Feb. 9, 2015) (taking judicial notice of "the fact that Marilyn Monroe is frequently the subject of creative works"); <u>Fillmore</u>, (C.D. Cal.), Case No. 2:16-cv-04348-AB-SS (taking judicial

5

notice of facts regarding the biblical figure Lazarus, the "The Lazarus Phenomenon," and the use of the name Lazarus in expressive works).   Here, the Court should take judicial notice of the facts discussed below, none of which are subject to reasonable dispute. [1]

### A.   Automobile Collisions with Deer Are A Common Occurrence.

The Court should take judicial notice of the fact that automobile collisions with deer are a common occurrence, particularly in rural areas.  For example, one major insurance company, State Farm, reported that between July 1, 2015 and June 30, 2016, there were over 1.3 million claims for damage caused by a collision with a deer.  Stahl Decl. ¶ 11 & Ex. 9, p. 3.  An insurance journal reported that "[a]n estimated 1.23 million deer-vehicle collisions occurred in the U.S. between July 1, 2011 and June 30, 2012."  Id. Ex. 9, p. 4;  see also id. p. 9 ("State Farm estimated that 2.3 million collisions between deer and vehicles occurred in the U.S. during the two-year period ending on June 30 [2010].")  The Federal Highway Administration has also found that "[a]nimal collisions expressed as a percentage of all reported crashes were significantly larger for rural roads when compared to urban roads."  See Ex. 9, p. 13.

Collisions between deer and vehicles also have been depicted in many other expressive works.  Examples include:

"River Road" by Carol Goodman (2016):  In this novel, the protagonist hits a deer while driving home.  See Stahl Decl. ¶ 12, Ex. 9, p. 18.

"Seeing Deer" by Craig Childs (2007):  In this article from Orion Magazine, the author recounts the first time he hit a deer.  See id., p. 20-22.

---

[1] Defendants seek judicial notice of these facts, and of the generic and common literary elements discussed in Section IV, infra, in support of their argument that the Film is not substantially similar to any protectable expression found in Plaintiff's Book.  In its Order granting Defendants' Motion to Dismiss the FAC, the Court noted these same facts and elements "may be proper subject for judicial notice," but found judicial notice unnecessary because it dismissed the FAC without reaching the issue of substantial similarity.  Order, at 6.

1   "Tammy" (2014):  In this feature film, the title character hits a deer while
2   looking for her lip balm while driving her car.  See id., p. 23.

3   "Cabin Fever" (2002): This horror movie includes a scene in which a man hits
4   a deer while he is being pursued.  See id., p. 26.

5   **B.    Households With Two Children Are Common.**

6   A court may take judicial notice of statistical evidence.  See, e.g., Matthews v.
7   Nat'l Football Council, 688 F.3d 1107, 1113 & n. 5 (9th Cir. 2012) (granting a
8   request for judicial notice of statistics available on the NFL's website).  Further,
9   "[p]ublic records, such as census data, is appropriate subject matter
10  for judicial notice."  Cactus Corner, LLC v. U.S. Dep't of Agric., 346 F. Supp. 2d
11  1075, 1098 (E.D. Cal. 2004), aff'd, 450 F.3d 428 (9th Cir. 2006).  Accordingly, the
12  Court can take judicial notice of the fact that in 2016, according to U.S. Census data,
13  over 13 million U.S. households had two children.  See Stahl Decl. Ex. 10, p. 2.  See
14  also id. p. 24 (as of 2016, nuclear family accounts for "54% of households"), id. p. 13
15  (in 2015, 46 % of U.S. children lived with 2 parents).

16  **C.    Households With A Dog Are Common.**

17  The Court should take judicial notice that in 2015-2016, at least 44% of
18  households, which is more than 54 million households, owned at least one dog.  See
19  Stahl Decl., Ex. 11, p. 2.  See also id., p. 7 (in 2013-14, "[d]ogs and cats are still the
20  most popular species, owned by 46.7 percent and 37.3 percent of the U.S. population,
21  respectively.")

22  **D.    Interracial Romantic Relationships Are Increasingly Common and**
23  **Are Often Depicted In Film, Literature and Non-Fiction Works.**

24  Interracial relationships are becoming increasingly common.  The 2010 Census
25  showed that interracial and interethnic marriages grew by 28% between 2000 and
26  2010.  Stahl Decl. ¶ 17 & Ex. 12, p. 14.  As the New York Times recently reported,
27  "according to the Pew Research Center, one in six newlyweds in the United States is
28  involved in a mixed marriage."  Stahl Decl. ¶ 16 & Ex. 12, p.7.

Interracial relationships have been discussed or depicted in numerous expressive works.  A search on Amazon for "interracial relationship" brings up more than two thousand books.  <u>See</u> Stahl Decl. ¶ 15, Ex. 12, p. 1.  Examples of films and books on this topic include the following:

"Guess Who's Coming to Dinner" (1967):  This iconic feature film is about an interracial relationship, in which a white woman introduces her liberal parents to her African American boyfriend.  Stahl. Decl ¶ 18, Ex. 12, p.16.

"Guess Who" (2005):  This movie is a modern remake of "Guess Who's Coming to Dinner," but in this version, an African American woman brings home her white fiancé to meet her parents.  <u>See</u> Ex. 12, p. 18.

"Loving" (2016):  This movie is a historic drama about the interracial couple involved in the landmark Supreme Court decision <u>Loving v. Virginia</u>, which invalidated miscegenation laws.  <u>See</u> <u>id.</u>, p. 20.

"Loving vs. Virginia" by Patricia Powell (2017):  A documentary novel about the interracial couple involved in <u>Loving v. Virginia</u>.  <u>See</u> <u>id.</u>, p. 25.

"Jungle Fever" (1991):  This film focuses on a black businessman who has an affair with a white coworker.  <u>See</u> <u>id.</u> p. 23.

"The Girl who Fell From the Sky" by Heidi W. Durrow:  In this novel, a biracial protagonist has a new boyfriend who is white.  <u>See</u> <u>id.</u>, p. 27.

"The Story of a Beautiful Girl" by Rachel Simon:  A novel about a relationship between a white, mentally disabled woman and a deaf African American man.  <u>See</u> <u>id.</u>, p. 29.

"Wherever There is Light" by Peter Golden:  A novel about a German Jewish immigrant falling in love with a African American man.  <u>See</u> <u>id.</u>, p. 31.

"The Bodyguard" (1992):  A movie about a white bodyguard who falls in love with the African American female singer he protects.  <u>See</u> <u>id.</u>, p. 33.

"Lakeview Terrace" (2008):  In this movie, a police officer terrorizes an interracial couple.  <u>See</u> <u>id.</u>, p. 35.

8

## IV.  THIS COURT CAN TAKE JUDICIAL NOTICE OF GENERIC OR COMMON LITERARY ELEMENTS.

Courts frequently take judicial notice of generic elements that are prevalent in expressive works.  For example, in <u>Zella</u>, 529 F. Supp. 2d at 1129, the court took judicial notice that "the following elements of a television show are common and prevalent in public works: (a) a host; (b) guest celebrities; (c) an interview; and (d) a cooking segment."  <u>Id.</u>  The court concluded that judicial notice was proper "because these elements are generally known and can be verified simply by watching television for any length of time."  <u>Id.</u>

Other courts similarly have taken judicial notice of common elements that appear in expressive works.  <u>See</u>, <u>e.g.</u>, <u>Pelt v. CBS, Inc.</u>, No. CV-92-6532 LGB(SHX), 1993 WL 659605, at *6 & n.3 (C.D. Cal. Oct. 25, 1993) (taking judicial notice of fact that nearly every television talk show has elements of a moderator, a topic for discussion and guests, and stating that such common elements therefore do not receive copyright protection); <u>DuckHole Inc. v. NBC Universal Media LLC</u>, No. CV 12-10077 BRO CWX, 2013 WL 5797279, at *4 (C.D. Cal. Sept. 6, 2013) (taking judicial notice of "common elements of a veterinary hospital which include the setting that contains an operating room, examining room, a lobby, and pets").

This Court also may take judicial notice of facts confirmed by descriptions on the IMDb website, http://www.imdb.com.  <u>See</u> <u>Klein v. Leis</u>, No. 1:06-CV-164, 2006 WL 1489686, at *1 (S.D. Ohio May 30, 2006) (taking judicial notice "of the fact that the theatrical film Silence of the Lambs (Orion Pictures, 1991) featured a serial murderer character named Hannibal Lector (or Lecter)" as evidenced by the IMDb page), <u>aff'd</u>, 548 F.3d 425 (6th Cir. 2008).

Here, Defendants ask the Court to take judicial notice that the use of plot devices like "meeting the parents" for the first time, and having an uneasy relationship with a significant other's family, are commonplace elements in expressive works, and did not originate with Plaintiff's book.

9

## A. A Romantic Couple "Meeting the Parents for the First Time" Is a Common Experience, Depicted In Numerous Expressive Works.

Books, films, and other expressive works describing or depicting a member of a couple meeting the other member's parents – typically at a holiday or special family event – are exceedingly common. Examples of such works include:

"Guess Who's Coming to Dinner" (1967): The movie is about an interracial relationship, in which a white woman introduces her parents to her African American boyfriend. See Ex. 12, p. 16 .

"Guess Who" (2005): This movie is a remake of "Guess Who's Coming to Dinner" but in this version, the African American daughter brings home her white fiancé to meet her parents. See id., p. 18.

"The Other Woman" by Jane Green (2006): A novel about a daughter-in-law who initially loves her new family but soon realizes that her mother-in-law is too meddlesome. See Stahl Decl. ¶ 20 & Ex. 13, p. 3.

"Meet the Parents" (2000): A movie about the protagonist meeting his girlfriend's family in Long Island. See id., p. 5.

"The Family Stone" (2005): A movie about a conservative business woman who visits her boyfriend's family during Christmas. See id., p. 9.

"The Proposal" (2009): In this movie, an uptight business women meets her fiancée's family for the first time. See id., p. 12.

"Why Him?": A movie about a father who visits his daughter and meets her boyfriend for the first time. See id., p. 15.

Additionally, the topic of "meeting his/her parents for the first time" has spawned countless advice columns, magazine articles and other commentary. A search on Google for "meeting boyfriend's parent" resulted in over 1.2 million hits. See Stahl Decl. ¶ 19, Ex. 13, p. 1. These include an article published in The New York Times about a minority woman bringing home her white boyfriend; and an

online article published on Glamour magazine's website with ten awkward "meet-the-parents" stories.  <u>See</u> Ex. 13, p. 13 & 21.

### B.    Conflict with a Significant Others' Family is a Common Element In Many Narrative Works.

Works depicting a tense or uneasy dynamic with a romantic partner's family are exceedingly common.  In addition to the works listed in Section IV.A, other examples include the following:

The Bible.  Genesis, Chapter 26, Verses 34-35, describes Esau's parents' strong disapproval of his marriage to a woman from another land.  ("And Esau was forty years old when he took to wife Judith the daughter of Beeri the Hittite, and Bashemath the daughter of Elon the Hittite: Which were a grief of mind unto Isaac and to Rebekah." ).  <u>See</u> Stahl Decl. ¶ 21, Ex. 14, p. 3.

Luke, Chapter 12, Verses 52-53, is another biblical verse about family conflict, describing a household "divided … the  mother in law against her daughter in law."  <u>See</u> <u>id.</u>, p. 9.

"Meet the Fockers" (2004):  This movie is a sequel to "Meet the Parents" and focuses on the difficult interactions between the families.  <u>See</u> <u>id.</u>, p. 12.

"Shrek 2" (2004):  In this movie, an ogre deals with his wife's royal but difficult family.  <u>See</u> <u>id.</u>, p. 14.

"The Great Outdoors" (1988):  This movie about a family's vacation being ruined when the in-laws visit.  <u>See</u> <u>id.</u>, p. 16.

"National Lampoon's Christmas Vacation" (1989):  In this movie comedy, the in-laws stop by to celebrate Christmas, with resulting chaos.  <u>See</u> <u>id.</u>, p. 18.

"The In-Laws" (1979):  A movie about the in-laws meeting, with tensions and mishaps ensuing.  <u>See</u> <u>id.</u>, p. 21.

"My Big Fat Greek Wedding" (2002):  A movie about a Greek woman trying to fit in with her fiancé's non-Greek family, and his family with hers.  <u>See</u> <u>id.</u>, p. 23.

11

"Four Christmases" (2008):  A movie about a couple having to spend Christmas with four parents.  See id., p.  25.

"Love Story" by Erich Segal (1970):  The wealthy parents of a Harvard student sever ties with him after he announces his plans to marry a woman who is from a poor family with no reputable lineage.  See id., p. 28.

"A Song of Ice and Fire: Vols I-VII" by R. R. Martin:  The "Game of Thrones" series of novels, which focus on the interaction between rival families interlinked by marriages as they vie for power.  See id., p. 30.

## V.    CONCLUSION

For all the reasons set forth above, Defendants ask this Court to take judicial notice of the following:

1.     The contents of Plaintiff's Book, "The Covering."

2.     The contents of the Defendants' full-length feature film "Get Out."

3.     The Complaint filed in the State Court Action.

4.     First Amended Complaint filed in the State Court Action.

5.     Order sustaining Demurrer in the State Court Action.

6.     Order denying Special Motion to Strike in the State Court Action.

7.     Order granting motion to dismiss in Fillmore v. Blumhouse Productions, et al., (C.D. Cal.), Case No. 2:16-cv-04348-AB-SS.

8.     The Complaint, dismissal, and docket from the case Christian v. Kensington,  Case No. 14-cv-02301 (M.D. Tenn.).

9.     First amended complaint, dismissal, and docket from the case New York Periodical Distributors, Inc. v. Kensington Publishing, Case No. 5:05-cv-66 (N.D.N.Y.).

10.    Complaint, dismissal, and docket from the case Thompson v. Kensington Publishing, Case No. 14-cv-02949-CM (S.D.N.Y.).

11.    The fact that automobile collisions with deer are a common occurrence, particularly in rural areas.

12. The fact that millions of U.S. families consist of two parents and two children.

13. The fact that millions of U.S. households own at least one dog.

14. The fact that interracial romantic relationships are increasingly common.

15. The fact that interracial romantic relationships have been depicted in many expressive works.

16. The fact that a romantic couple "meeting the parents for the first time" is a common occurrence, and a stock plot device in expressive works.

17. The fact that conflict with a significant other's family is a common element in many expressive works.

DATED:  November 27, 2017

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
ERIC M. STAHL
DIANA PALACIOS

By: _/s/Kelli L. Sager_____

Kelli L. Sager
Attorneys for Defendants
Jordan Peele, Blumhouse Productions, QC Entertainment and NBCUniversal Media, LLC

REQUEST FOR JUDICIAL NOTICE
4843-1422-1398v.2 0103245-000008